ERIC GRANT
United States Attorney
JESSICA DELANEY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:25-cr-0191 DJC |
|---|---|
| Plaintiff, | 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| v. | |
| OLEG GREGORVICH FURSOV, | |
| Defendant. | |

INDICTMENT

The Grand Jury charges:

OLEG GREGORVICH FURSOV,

defendant herein, as follows:

**INTRODUCTION AND RELEVANT ENTITIES**

At all times relevant to the Indictment:

1.      Defendant OLEG GREGORVICH FURSOV was a resident of Elk Grove, California, within the State and Eastern District of California.

2.      FURSOV was the owner and sole proprietor of Fresh Air Comfort LLC. Fresh Air Comfort LLC was a heating, ventilation and air conditioning company, incorporated in Sacramento, California.

3.      The Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and

viability of small businesses and by assisting in the economic recovery of communities after disasters.

*The Economic Injury Disaster Relief Program*

4. The Economic Injury Disaster Loan Program ("EIDL") was a United States SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

5. The CARES Act authorized the SBA to provide EIDL loans to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

6. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

7. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the SBA.

8. EIDL loan funds could be used for payroll expenses and business expenses, such as, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

9. In the EIDL application, the applicant was required to provide information as to whether any other company or person assisted the applicant in completing the application. An applicant was also required to acknowledge program rules and make certain affirmative certifications in order to be eligible to obtain the loan. One such certification required the applicant to affirm that the "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury. . ." The Borrower also certified that no fees were paid to any representative in connection with applying for a loan, other than those reported on the loan application.

10. Any funds issued under the EIDL are issued directly by the SBA. EIDL fund

applications are received in cloud-based platforms. The location of the server through which the EIDL application is submitted is based on the date the application was processed by SBA and the application number.

11. The maximum loan amount for EIDL loans fluctuated over time. In April 2020, the maximum loan amount for an EIDL was $150,000. In September 2021, the maximum loan amount increased to $2 million. As the maximum loan amount increased, applicants could request an already-existing EIDL loan be modified to a higher loan amount. A request for a modification of an EIDL loan was submitted using the SBA's cloud-based platform. If the SBA approved a request to modify a loan, new loan documents, including an amended loan authorization and agreement, were generated for the applicant's review and signature. The new loan documents required the applicant to make the same affirmative certifications as were required in an initial EIDL application.

## SCHEME TO DEFRAUD

12. Between in or about April 2020 and in or about May 2023 in the County of Sacramento, State and Eastern District of California, and elsewhere, FURSOV knowingly and with the intent to defraud, devised, intended to devise, participated in, and executed, a material scheme and artifice to defraud the SBA of money and property, and to obtain money and property from the SBA by means of materially false and fraudulent pretenses, representations, and promises.

13. The purpose of the scheme and artifice to defraud was to obtain money in the form of an EIDL loan from the SBA. Specifically, FURSOV applied for and received an EIDL loan modification for over $1 million on behalf of his company, Fresh Air Comfort LLC, with the intent to defraud, steal, and convert proceeds of the loan for his personal use and without the intent to use all the proceeds for their authorized purpose.

## MANNER AND MEANS

14. On or about April 15, 2020, FURSOV submitted an EIDL application to the SBA on behalf of Fresh Air Comfort LLC. That application was processed, approved, and funds were disbursed on or about June 18, 2020.

15. In or about December 2021, FURSOV learned that the EIDL program rules had changed to allow for loan modifications of significantly higher amounts.

INDICTMENT                                          3

16. On or about January 4, 2022, FURSOV began the process of applying for a modification of the EIDL loan he originally applied for in April 2020.

17. As a part of that modification process, Fursov received new loan documents, including an amended loan authorization and agreement. On or about January 20, 2022, FURSOV signed the amended loan authorization and agreement he received, and by doing so, certified that he would use the funds solely for working capital and affirmed that all statements in his entire loan modification application were true and correct.

18. In signing the amended loan authorization and agreement, FURSOV signed and agreed to the following statements, knowing that he did not have the intent expressed and that the facts were untrue:

 a) That he would use the proceeds of the loan solely as working capital to alleviate economic injury;

 b) That no fees were paid, directly or indirectly, to any representative for services provided, or to be provided, in connection with applying for or closing the loan; and

 c) That all representations in the entire loan application, including supplementary submissions for the modification, were true.

19. The above statements were untrue, as FURSOV intended to convert at least a portion of the funds for his personal use. Further, FURSOV made the affirmative certifications despite knowing that he intended to pay an individual for assisting him with obtaining the loan.

20. On or about January 20, 2022, the SBA approved FURSOV's loan modification application.

21. On or about January 25, 2022, the SBA funded FURSOV's modified loan.

22. Between November 21, 2022, and May 2023, the SBA attempted to contact FURSOV regarding repayment of the modified loan. FURSOV avoided all contact and interaction with employees from the SBA following the funding of the modified loan.

**WIRE TRANSFER**

23. On or about January 26, 2022, in the State and Eastern District of California and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and

attempting to do so, FURSOV did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, to wit: a wire transfer of $1,004,600 from the SBA into the Fresh Air Comfort LLC business checking account ending in 4297.

All in violation of Title 18, United States Code, Sections 2 and 1343.

FORFEITURE ALLEGATION:   [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. Upon conviction of the offense alleged in this Indictment, defendant OLEG GREGORVICH FURSOV shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violation, including but not limited to the following:

   a. A sum of money equal to the total amount of proceeds traceable to such offense, for which defendant is convicted.

2. If any property subject to forfeiture, as a result of the offense alleged in this Indictment, for which defendant is convicted:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA
FOREPERSON

*[signature]*
ERIC GRANT
United States Attorney

INDICTMENT                                   5

No. _____

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

THE UNITED STATES OF AMERICA
vs.

OLEG GREGORVICH FURSOV

## INDICTMENT

**VIOLATION(S):**   18 U.S.C. § 1343; 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)

*A true bill,*   **/s/ Signature on file w/AUSA**

_____
*Foreman.*

*Filed in open court this* \_\_\_14th\_\_\_ *day*

*of* \_\_\_August\_\_\_, *A.D. 20* \_25\_

_____/s/ J. Murphy_____
*Clerk.*

*Bail, $* **Detention Without Bail - Bail to be Determined at Initial Appearance in Federal Court**

GPO 863 525

<u>**United States v. Oleg Gregorvich Fursov**</u>
**Penalties for Indictment**

VIOLATION: 18 U.S.C. § 1343 – Wire Fraud

PENALTIES: Maximum of 20 years in prison;
Fine of up to $250,000 or twice the gross gains or loss; and
Supervised release of 3 years

SPECIAL ASSESSMENT: $100 (mandatory)

**FORFEITURE ALLEGATION:**

VIOLATION: 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES: As stated in the charging document